UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIETER HEYDENRYCH, individually and on behalf of all others similarly situated, | § § § | Civil Action No. 4:15-cv-1470 |
| Plaintiff, | § § | |
| v. | § § | |
| EAGLE ROCK ENERGY PARTNERS, L.P., EAGLE ROCK ENERGY GP, L.P., EAGLE ROCK ENERGY G&P, LLC, VANGUARD NATURAL RESOURCES, LLC, TALON MERGER SUB, LLC, JOSEPH A. MILLS, CHRISTOPHER D. RAY, WILLIAM K, WHITE, WILLIAM A. SMITH, HERBERT C. WILLIAMSON III, PEGGY A. HEEG, PHILIP B. SMITH, and DAVID W. HAYES, | § § § § § § § § § § § | |
| Defendants. | § | |

**CLASS ACTION COMPLAINT**
**FOR BREACH OF FIDUCIARY DUTY**

Plaintiff Pieter Heydenrych ("Plaintiff"), by his attorneys, alleges upon information and

belief, except for his own acts, which are alleged on knowledge, as follows:

1.      Plaintiff brings this class action on behalf of the public unitholders of Eagle Rock

Energy Partners, L.P. ("Eagle Rock" or the "Partnership") against the members of Eagle Rock

Energy G&P, LLC ("G&P") Board of Directors (the "Board" or the "Individual Defendants") for

their breaches of fiduciary duties arising out of their attempt to sell the Partnership to Vanguard

Natural Resources, LLC ("Vanguard") for inadequate consideration.  The Board makes all

determinations related to the conduct of the Partnership's business and operations.

2.      On May 21, 2015, Vanguard and the Partnership announced a definitive

agreement under which Vanguard, through its wholly owned subsidiary Talon Merger Sub, LLC

("Merger Sub"), will acquire all of the outstanding units of Eagle Rock for 0.185 Vanguard units per Eagle Rock unit (the "Proposed Transaction").  Based on the closing price of Vanguard's units on May 21, 2015, the implied per unit price that Eagle Rock unitholders will receive is $3.05.  Inclusive of debt, the Proposed Transaction is valued at approximately $614 million and is expected to close in the third quarter of 2015.  The Board has breached its fiduciary duties by agreeing to the Proposed Transaction for inadequate consideration.  As described in more detail below, the Partnership has undergone a transformational year that has positioned Eagle Rock for future success.  Rather than allowing adequate time for the Partnership's transformation to take root, the Board has rushed into a sale and agreed to sell the Partnership for inadequate consideration.

3.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with unreasonable deal protection devices that serve to prevent other bidders from making a successful competing offer for the Partnership.  Specifically, pursuant to the Agreement and Plan of Merger dated May 21, 2015 (the "Merger Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that prohibits the Partnership from soliciting other potential acquirers or from continuing ongoing discussions with potential acquirers; (ii) a provision that provides Vanguard with two business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Partnership to pay Vanguard a termination fee of $20 million in order to enter into a transaction with a superior bidder.  Additionally, holders of approximately 39.5% of the Partnership's outstanding units have agreed to vote in favor of the Proposed Transaction and against any alternative proposal without regard to its terms.  These provisions unreasonably inhibit the Board's ability to act with

respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Eagle Rock.

4.      The Individual Defendants have breached their fiduciary duties and G&P, Eagle GP (defined in paragraph 9 below), Vanguard, and Merger Sub have aided and abetted such breaches.  Plaintiff seeks to enjoin the Proposed Transaction unless and/or until Defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

5.      The Court has personal jurisdiction over each Defendant because each is organized under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more Defendant either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Eagle Rock common units.  Plaintiff is a citizen of Canada.

8.      Eagle Rock is a partnership organized and existing under the laws of the State of Delaware.  It maintains its principal executive offices at 1415 Louisiana Street, Suite 2700, Houston, Texas, 77002.

9.      Defendant Eagle Rock Energy GP, L.P. ("Eagle GP") is the Partnership's general partner and manages Eagle Rock's operations and activities.  Eagle GP, and by extension Eagle Rock, is overseen by the board of directors of G&P.

10.     Defendant G&P is the general partner of Eagle GP, and by extension manages Eagle Rock's operations and activities.

11.     Defendant Joseph A. Mills ("Mills") has been the CEO and Chairman of the Board since May 2007.  Additionally, since April 19, 2006, Defendant Mills has served as the CEO and a manager of Montierra Management LLC, which is the general partner of Montierra Minerals & Production, L.P. ("Montierra").  Natural Gas Partners VII, L.P. ("NGP VII") owns a majority of the limited partner interests in Montierra.  From March 2001 to August 2003, Mills was a Senior Vice President of El Paso Production Company, and from October 1999 to March 2001, Mills served as a Vice President of El Paso Production Company, a wholly owned subsidiary of El Paso Corporation.  Before his positions with El Paso related entities, Mills held various executive and senior management positions with Sonat Exploration Company, a wholly owned subsidiary of Sonat, Inc.  Defendant Mills is a citizen of Texas.

12.     Defendant Christopher D. Ray ("Ray") has been a G&P director since June 2011.  NGP VII and Natural Gas Partners VIII, L.P., and certain other entities controlled by them (collectively, "NGP"), owns approximately 39.5% of the Partnership's outstanding units.  NGP has the right to appoint a maximum of three members to the Board, but one of those three seats is currently vacant.  Ray is one of NGP's two current appointees to the Board.  Ray is a Senior Managing Director and a member of the Executive Committee of NGP.  Defendant Ray is a citizen of Texas.

4

13.     Defendant William K. White ("White") has been a G&P director since October 2006.  Although White is not an NGP appointee to the Board, he has extensive connections with NGP and its related entities.  He has held various positions on the board of various NGP entities. From December 2012 to September 2014, White served as a director of NGP Capital Resource Company, and from July 2008 through December 2008, White served as a director of CRC-Evans Internal, Inc., an affiliate of a portfolio company of NGP.  Defendant White is a citizen of New Mexico.

14.     Defendant William A. Smith ("W. Smith") has been a G&P director since September 2007.  Defendants W. Smith, Mills, and Heeg (defined in paragraph 14 below) all have ties with El Paso Corporation and had overlapping tenures at the company and its related entities.  From October 1999 to June 2002, W. Smith was an executive vice president of El Paso Corporation.  From May 2008 to November 2014, W. Smith was a member of the board of directors of El Paso Pipeline GP Company, LLC, which is the general partner of El Paso Pipeline Partners, L.P.  Prior to joining El Paso Corporation in 1999, W. Smith was executive vice president and general counsel of Sonat, Inc.  Defendant Mills also worked for Sonat and its related entities.  W. Smith and Mills worked for the company and its related entities at the same time.  Defendant W. Smith is a citizen of Texas.

15.     Defendant Herbert C. Williamson, III ("Williamson") has been a G&P director since July 2010.  Defendant Williamson is a citizen of Texas.

16.     Defendant Peggy A. Heeg ("Heeg") has been a G&P director since July 2010. Defendant Heeg held various positions with El Paso Corporation before 2004, including executive vice president and general counsel from 2001 through 2003.  Defendants Heeg, Mills,

and W. Smith all were employed by El Paso Corporation and at least a portion of their tenures at El Paso related entities overlapped.  Defendant Heeg is a citizen of Texas.

17.     Defendant Philip B. Smith ("P. Smith") has been a G&P director since October 2006.  Defendant P. Smith is a citizen of Oklahoma.

18.     Defendant David W. Hayes ("Hayes") has been a G&P director since November 2011.  Hayes is one of NGP's two current appointees to the Board.  Hayes is a managing director of NGP and serves as NGP's director of Corporate Finance.  Defendant Hayes is a citizen of Texas.

19.     Defendants referenced in ¶¶ 11 through 18 are collectively referred to as the Individual Defendants and/or the Board.

20.     Defendant Vanguard is a publicly traded Delaware limited liability company with its headquarters located at 5847 San Felipe, Suite 3000, Houston, Texas, 77057.  Vanguard acquires, produces, and develops oil and natural gas properties in various oil and natural gas reserves located in Wyoming, Arkansas, Oklahoma, Texas, New Mexico, Montana, Colorado, Louisiana, Mississippi, and North Dakota.

21.     Defendant Merger Sub is a Delaware limited liability company wholly owned by Vanguard that was created for the purposes of effectuating the Proposed Transaction.

### INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

22.     By reason of the Individual Defendants' positions with the Partnership as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public unitholders of Eagle Rock and owe them, as well as the Partnership, a duty of care, loyalty, good faith, candor, and independence.

23.     Under Delaware law, where the directors of a publicly traded partnership undertake a transaction that will result in either a change in corporate control or a breakup of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's unitholders and, if such transaction will result in a change of corporate control, the unitholders are entitled to receive a significant premium.  To comply with their fiduciary duties, the Individual Defendants may not take any action that:

   (a)     adversely affects the value provided to the Partnership's unitholders;

   (b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the partnership or its assets;

   (c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the partnership's unitholders; and/or

   (d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public unitholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

   (a)     participating in any transaction where the Individual Defendants' loyalties are divided;

   (b)     participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public unitholders of the partnership; and/or

   (c)     unjustly enriching themselves at the expense or to the detriment of the public unitholders.

25.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to Plaintiff and other public unitholders of Eagle Rock.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons and/or entities that owned Eagle Rock common units (the "Class") as of May 21, 2015, the date the Proposed Transaction was announced.  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of the close of business on May 18, 2015, there were more than 152.9 million common units outstanding.  All members of the Class may be identified from records maintained by Eagle Rock or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Have the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to Plaintiff and

the other members of the Class in connection with the Proposed Transaction;

(ii)     Have the Individual Defendants breached their fiduciary duty to maximize unitholder value for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)    Have the Individual Defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(iv)     Have the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Partnership or its assets;

(v)      Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

(vi)     Whether Defendants have violated the terms of the Second Amended and Restated Agreement of Limited Partnership, as amended by Amendment No. 1 (the "Partnership Agreement"), and its implied covenant of good faith and fair dealing;

(vii)    Have Vanguard and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(viii)   Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

29.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

30.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>**FURTHER SUBSTANTIVE ALLEGATIONS**</u>

*Partnership Background and Its Poise for Growth*

32.     Eagle Rock is a growth-oriented upstream master limited partnership engaged in the exploitation, development, and production of oil and natural gas properties and the ancillary gathering, compressing, treating, processing, and marketing services with respect to its production of natural gas, natural gas liquids, condensate, and crude oil.   The Partnership has high working interest properties and development opportunities in four regions in the United States, including (i) Mid-Continent, which is comprised of areas in Oklahoma, Arkansas, and the Texas Panhandle; (ii) Southern Alabama; (iii) the Permian, which includes areas in West Texas; and (iv) East and South Texas, Mississippi, and Louisiana assets.

33.     In 2014, the Partnership transitioned into a pure-play upstream master limited partnership by divesting its midstream business to Regency Energy Partners, L.P. for $1.325 billion.   In his annual letter to unitholders, Defendant Mills discussed the positive aspects of the divestiture and how the sale positioned the Partnership for future success.   Mills wrote that the "completion and timing of the [m]idstream divestiture has energized Eagle Rock into a

partnership with a strong balance sheet and liquidity, upstream assets in key oil and gas basins in the United States, and a team in place to aggressively pursue accretive acquisition opportunities."

34.     Throughout the annual letter, Mills discussed that the Partnership sought to acquire new properties in an attempt to expand its business.  Specifically, Mills explained that "Eagle Rock's healthy balance sheet and liquidity will enable us to expand our possibilities in 2015."  He stated that Eagle Rock "intends to be opportunistic during this period of anticipated industry asset monetization activity in the second half of 2015" and the Partnership expected "many upstream companies will divest of non-core assets to reduce debt levels, improve liquidity, and fund drilling programs."   As a result, the environment "could present an opportunity for Eagle Rock to acquire previously unavailable long-life, shallow decline producing assets that fit will in our MLP structure."

35.     The Partnership got off to a strong start in 2015 and emphasized that it was pursuing its stated goal of evaluating potential acquisitions.  On April 29, 2015, the Partnership reported its financial results for the first quarter of 2015, for the period ended March 31, 2015. In the press release, Defendant Mills stated that "Eagle Rock had a strong first quarter" despite the "tumultuous commodity price environment."   Looking forward, Mills stated that the "Partnership continues to remain very active in its business development efforts, evaluating more than $1 billion worth of MLP-appropriate asset acquisitions opportunities year to date."   Mills added that although the Partnership was taking a "patient approach to acquisitions," it "expect[ed] to have an opportunity to utilize our liquidity to make a meaningful accretive acquisition in 2015 that will enable us to achieve greater scaled and diversity in our asset base while growing distributable cash flow."

36.     Despite the Partnership's stated intent to remain patient in evaluating acquisition opportunities and expectation that many entities would be selling non-core assets in the second half of 2015, the Board rushed into the Proposed Transaction and agreed to sell the Partnership for inadequate consideration.

***The Proposed Transaction Fails to Maximize Unitholder Value***

37.     In a press release dated May 21, 2015, the Partnership announced that it had entered into the Merger Agreement with Vanguard pursuant to which Vanguard, through Merger Sub, will acquire all of the Partnership's outstanding units for 0.185 Vanguard common units per Partnership unit.   The implied value of the consideration based on Vanguard's closing stock price on May 21, 2015, is $3.05 per Eagle Rock unit.

38.     Given the Partnership's recent transformation and the lack of time to fully implement its business plans, the consideration that unitholders will receive in the Proposed Transaction is inadequate and significantly undervalues the Partnership.

39.     Eagle Rock units have been trading in excess of the implied offer price of $3.05 per unit.  In fact, as recently as November 26, 2014, Eagle Rock's units closed at $3.14 per unit.

40.     The Proposed Transaction consideration fails to adequately compensate Eagle Rock's unitholders for the significant benefits that Vanguard will receive in the Proposed Transaction.  As discussed in Vanguard's May 26, 2015 acquisitions overview conference call, the Proposed Transaction is a strategic merger for Vanguard.   Richard Robert ("Robert"), Vanguard's Executive Vice President and CFO, stated on the conference call that the Proposed Transaction "is another excellent strategic fit for Vanguard and will strengthen Vanguard's existing footprint in the Mid-Continent region in particular."  Robert went on to say that certain of Eagle Rock's properties "overlay nicely with our existing assets.  And with a high proved

developed percentage of 78% and a proved reserve life of 12 years, they are highly complementary to our existing asset base."

41.     Despite these significant benefits inherent in the transaction for Vanguard, however, the Board failed to secure a fair price for the Partnership, either for the intrinsic value of its assets or the value of the Partnership's assets to Vanguard.

42.     Additionally, in the same conference call Robert indicated that certain Eagle Rock employees may be offered continued employment with the combined entity.  Although Vanguard recently acquired LRR Energy, L.P. ("LRR"), it appears that Eagle Rock employees and not LRR employees will be offered positions in the combined entity.   Robert stated on the conference call that "one very important benefit" of the Proposed Transaction was that it gave Vanguard "an opportunity to attract and retain experienced oil and gas professionals from Eagle Rock.  The LRR acquisition did not come with any employees other than those out in the field.  So this allows Vanguard to help fill the positions that would ultimately be needed after the LRR closing."

43.     Moreover, financial commentators have recognized that Eagle Rock units were greatly undervalued.  In a December 3, 2014 article titled "Eagle Rock: With a Yield Over 10%, This Well Hedged MLP Is Worth Much More Than $3" and published on the financial website SeekingAlpha.com, the author argued that the Partnership's units "appear[ed] undervalued and potentially due for a solid rebound."  Indeed, the author argued that Eagle Rock's units could be worth ***up to $5 to $6 per unit***.  Specifically, the article stated:

> This stock looks deeply undervalued when you consider the yield and that book value is $4.87 per share.  The consensus analyst price target for this stock is $5.75.  Analysts at Standard & Poor's have set a $5 price target and they expect Eagle Rock to increase the distribution to 49 cents per share in 2015.  Based on other yields in the MLP sector, that could provide enough yield to easily support a share price of $5 to $6.  The current distribution of 7 cents per quarter or 28 cents

on an annual basis, offers a yield of more than 10%.  Just a few days ago this stock was trading at $3.28, but the recent hammering of the oil sector has created a true bargain in Eagle Rock shares.  The pullback in this stock is not deserved because of its strong balance sheet, $100 million buyback, extensive hedging at high prices and because it has limited exposure to oil.

44.     Vanguard is seeking to acquire the Partnership at the most opportune time, at a time when the Partnership is well positioned for future growth.

***The Unreasonable Deal Protection Devices***

45.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and unreasonable deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and potentially preclude competing offers will emerge for the Partnership.

46.     Section 7.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Vanguard.  Section 7.3(a) requires that the Partnership terminate any and all prior or ongoing discussions with other potential acquirers.

47.     Pursuant to Section 7.3(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify Vanguard of the bidder's identity and the terms of the bidder's offer.  Thereafter, Section 7.3(d) demands that should the Board determine to enter into a superior competing proposal, it must grant Vanguard two business days in which the Partnership must negotiate in good faith with Vanguard (if Vanguard so desires) and allow Vanguard to amend the terms of the Merger Agreement so that the competing proposal no longer constitutes a superior proposal.  In other words, the Merger Agreement gives Vanguard access to any rival bidder's information and allows Vanguard a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a

stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Vanguard and piggy-back upon the due diligence of the foreclosed second bidder.

48.     The Merger Agreement also provides that Eagle Rock must pay Vanguard a $20 million termination fee if the Partnership decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the unitholders with a superior offer.

49.     Moreover, in connection with the Proposed Transaction, Montierra Minerals & Production, L.P., Montierra Management LLC, Natural Gas Partners VII, L.P., Natural Gas Partners VIII, L.P. ("NGP VIII"), NGP Income Management L.L.C., Eagle Rock Holdings NGP 7, LLC, Eagle Rock Holdings NGP 8, LLC, ERH NGP 7 SPV, LLC, ERH NGP 8 SPV, LLC, NGP Income Co-Investment Opportunities Fund II, L.P., NGP Energy Capital Management, L.L.C. (collectively, the "Holders"), who collectively own approximately 39.5% of Eagle Rock's common units, have entered into voting agreements to vote in favor of the Proposed Transaction with Vanguard and against any alternative proposal or any proposal made in opposition to the adoption of the Merger Agreement without regard to the terms of the alternative proposal. Accordingly, 39.5% of Eagle Rock's common units is already "locked up" in favor of the Proposed Transaction.

50.     Ultimately, these deal protection provisions unreasonably restrain the Partnership's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

51.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Partnership unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duties
### (Against all Individual Defendants)

52.     Plaintiff repeats all previous allegations as if set forth in full herein.

53.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the unitholders of Eagle Rock and have acted to put their personal interests ahead of the interests of Eagle Rock unitholders.

54.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Partnership which imposes heightened fiduciary responsibilities to maximize Eagle Rock's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

55.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the unitholders of Eagle Rock because, among other reasons:

(a)     they failed to take steps to maximize the value of Eagle Rock to its public unitholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Eagle Rock; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

56.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Eagle Rock's assets and will be prevented from benefiting from a value-maximizing transaction.

57.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger, to the irreparable harm of the Class.

58.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Aiding and Abetting
### (Against Eagle GP, G&P, Vanguard and Merger Sub)

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     As alleged in more detail above, Defendants Vanguard and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

61.     As a result, Plaintiff and the Class members are being harmed.

62.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Partnership Agreement is a valid and binding contract between Plaintiff and other members of the Class on one hand and Defendants on the other.  An implied covenant of good faith and fair dealing arises from this contract.  In addition to the express terms of this contract, the implied covenants of good faith and fair dealing obligates the Individual Defendants to deal honestly, fairly, and equitably with Plaintiff and the class.

65.     The Individual Defendants breached the implied covenant of good faith and fair dealing by engaging in the misconduct described above.

66.     As a result, Plaintiff and the Class members are being harmed.

67.     Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)    enjoining, preliminarily and permanently, the Proposed Transaction;

(C)    in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

DATED:  June 1, 2015.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____
Thomas E. Bilek
TX Bar 02313525 / SDTX Bar 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Counsel for Plaintiff*

18

**OF COUNSEL:**

Shane T. Rowley
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY  10004
Tel: (212) 363-7500
Fax: (212) 363-7171