UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IRVING BRAUN, JUDITH BRAUN and CECIL PHILAN, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:15-cv-01470 |
| | § | CLASS ACTION |
| Plaintiffs, | § § | |
| | § | |
| vs. | § § | |
| | § | |
| EAGLE ROCK ENERGY PARTNERS, L.P.; EAGLE ROCK ENERGY G&P, LLC, EAGLE ROCK ENERGY GP, L.P., JOSEPH A. MILLS, CHRISTOPHER D. RAY, DAVID W. HAYES, WILLIAM K. WHITE, WILLIAM A. SMITH, HERBERT C. WILLIAMSON III, PEGGY A. HEEG, PHILIP B. SMITH, VANGUARD NATURAL RESOURCES, LLC, SCOTT W. SMITH, RICHARD A. ROBERT, W. RICHARD ANDERSON, BRUCE W. MCCULLOUGH and LOREN SINGLETARY, | § § § § § § § § § § § § § § § | |
| Defendants | § § | DEMAND FOR JURY TRIAL |

**CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 AND THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiffs, by counsel, individually and on behalf of all others similarly situated, respectfully bring this class action for violations of §§11 and 15 of the Securities Act of 1933 (the "1933 Act"), and §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated under the 1934 Act, against the herein named defendants.  Plaintiffs allege the following based upon the investigation of plaintiffs' counsel, which included a review of SEC filings by Eagle Rock Energy Partners, L.P. ("Eagle Rock" or the "Company") and Vanguard Natural Resources, LLC ("Vanguard"), as well as securities analysts' reports and advisories about Eagle Rock and Vanguard, press releases and other public statements issued by Eagle Rock and Vanguard, and media reports about Eagle Rock and Vanguard.  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     This is a class action brought on behalf of former holders of Eagle Rock common units in connection with the unit-for-unit acquisition of Eagle Rock by Vanguard.  This action is brought against: Eagle Rock; Eagle Rock Energy G&P, LLC ("LLC"), the general partner of Eagle Rock Energy GP, L.P. ("GP"), which in turn is the general partner of Eagle Rock; and the members of LLC's Board of Directors (the "Board").  These defendants collectively are referred to as the "Eagle Rock Defendants."  This action also is brought against Vanguard and certain of its officers and directors.  These defendants collectively are referred to as the "Vanguard Defendants."

2.     Plaintiffs' claims arise out of defendants' dissemination of false and misleading statements and omissions, in violation of §§11 and 15 of the 1933 Act, §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9, in a Form S-4 Registration Statement under the 1933 Act and

- 1 -

amendments thereto (collectively the "Registration Statements"), issued by the Vanguard Defendants, and in a Proxy Statement pursuant to §14(a) of the 1934 Act ("Proxy Statement") jointly issued by the Vanguard Defendants and the Eagle Rock Defendants.

3.     Headquartered in Houston, Texas, Eagle Rock was a growth-oriented master limited partnership engaged in the upstream business, which included exploiting, developing, and producing hydrocarbons in oil and natural gas properties. Eagle Rock's Second Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement") provided for a general partner of Eagle Rock rather than a board of directors. Pursuant to the Partnership Agreement, the LLC and the GP, and thus the Board of the LLC, controlled Eagle Rock. Eagle Rock's units were listed on the NASDAQ Global Select Market ("NASDAQ") under the symbol "EROC."

4.     Also headquartered in Houston, Texas, Vanguard is a publicly traded limited liability company focused on the acquisition and development of mature, long-lived oil and natural gas properties in the United States. Vanguard was formed in October 2006 and completed its initial public offering in October 2007. Its common units are listed on the NASDAQ under the symbol "VNR." Its Series A, Series B and Series C Cumulative Preferred units are also listed on the NASDAQ under the symbols "VNRAP," "VNRBP" and "VNRCP," respectively.

5.     On May 21, 2015, Eagle Rock and Vanguard announced that they had entered into a merger agreement pursuant to which Eagle Rock was to be acquired by Vanguard. Under the terms of that merger agreement, Vanguard was to acquire all of Eagle Rock's outstanding common units in a unit-for-unit transaction with an exchange ratio of 0.185 Vanguard common units per Eagle Rock common unit. The consideration to be received by Eagle Rock's

unitholders was valued at $3.05 per Eagle Rock common unit based on Vanguard's closing price as of May 21, 2015.

6.     The vote on the Vanguard/Eagle Rock merger took place on October 5, 2015, and the merger closed on October 8, 2015.  Since the close of the merger, the price of Vanguard common units has collapsed, falling by approximately 80%.  Thus, the consideration received by Eagle Rock's former unitholders in the merger is presently worth less than $0.40 per Eagle Rock unit.

7.     In connection with the merger, defendants issued the false and misleading Registration Statements and a false and misleading Proxy Statement.  Specifically, the Vanguard Defendants issued a Registration Statement on June 16, 2015, which was amended on multiple occasions before being declared effective on September 3, 2015.  The Eagle Rock Defendants, together with the Vanguard Defendants, issued a definitive Proxy Statement on September 3, 2015.  The Registration Statements and the Proxy Statement omit and/or misrepresent the material information detailed *infra*, in contravention of §§11 and 15 of the 1933 Act and §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, regarding the financial position and prospects of Vanguard.

8.     As explained herein, this information was material to Eagle Rock's unitholders in voting on the merger and accepting 0.185 Vanguard units in exchange for each of their valuable Eagle Rock units.  As such, defendants' violations of the 1933 Act and the 1934 Act, and SEC Rule 14a-9, have damaged plaintiffs and the class.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act for violations of §§11 and 15 of the 1933 Act, and pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9.

- 3 -

10.     This Court has jurisdiction over each defendant because each defendant is either a company that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Vanguard's headquarters are located at 5847 San Felipe, Suite 3000, Houston, Texas, and Eagle Rock's headquarters were, until the completion of the merger, located at 1415 Louisiana Street, Suite 2700 Houston, Texas.  Moreover, defendants' wrongful acts occurred in part in this District and the individual defendants reside and/or conduct business in this District.

## PARTIES

12.     Plaintiffs Irving Braun, Judith Braun and Cecil Philan were, at all relevant times until the merger, Eagle Rock unitholders, and they received Vanguard units in exchange for their Eagle Rock units in the merger.

13.     Defendant Eagle Rock was a Delaware limited partnership headquartered in Houston, Texas.

14.     Defendant GP was the general partner of Eagle Rock.

15.     Defendant LLC was the general partner of the GP.

16.     Defendant Joseph A. Mills ("Mills") was, until the merger, Eagle Rock's Chairman, Chief Executive Officer ("CEO") and a member of the Board.

17.     Defendant Christopher D. Ray ("Ray") was, until the merger, a member of the Board.

18.     Defendant David W. Hayes ("Hayes") was, until the merger, a member of the Board.

- 4 -

19.     Defendant William K. White ("White") was, until the merger, a member of the Board.

20.     Defendant William A. Smith ("W. Smith") was, until the merger, a member of the Board and its Lead Director.

21.     Defendant Herbert C. Williamson III ("Williamson") was, until the merger, a member of the Board.

22.     Defendant Peggy A. Heeg ("Heeg") was, until the merger, a member of the Board.

23.     Defendant Philip B. Smith ("P. Smith") was, until the merger, a member of the Board.

24.     The defendants named above in ¶¶13-23 are collectively referred to herein as the "Eagle Rock Defendants" and were responsible for issuing the false and misleading Proxy Statement.

25.     Defendant Vanguard is a Delaware limited liability company headquartered in Houston, Texas.  Vanguard issued the false and misleading Registration Statements and the false and misleading Proxy Statement.

26.     Defendant Scott W. Smith ("S. Smith") is the President, Chief Executive Officer and a Director of Vanguard.  S. Smith signed the false and misleading Registration Statements.

27.     Defendant Richard A. Robert ("Robert") is the Executive Vice President, Chief Financial Officer and a Director of Vanguard.  Robert signed the false and misleading Registration Statements.

28.     Defendant W. Richard Anderson ("Anderson") is a Director of Vanguard. Anderson signed the false and misleading Registration Statements.

29.     Defendant Bruce W. McCullough ("McCullough") is a Director of Vanguard. McCullough signed the false and misleading Registration Statements.

30.     Defendant Loren Singletary ("Singletary") is a Director of Vanguard.  Singletary signed the false and misleading Registration Statements.

31.     The defendants named above in ¶¶25-30 are collectively referred to herein as the "Vanguard Defendants."

32.     The defendants named above in ¶¶16-23 and ¶¶26-30 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the former public holders of Eagle Rock common units who have been harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

34.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

35.     The Class is so numerous that joinder of all members is impracticable.  According to Eagle Rock's SEC filings, there were 152,986,718 Eagle Rock common units outstanding as of July 28, 2015.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act and/or the 1934 Act, and SEC Rule 14a-9 promulgated thereunder;

- 6 -

(b)      whether the Registration Statements and/or the Proxy Statement were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

37.     Plaintiffs' claims are typical of the claims of the other members of the Class and plaintiffs do not have any interests adverse to the Class.

38.     Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

39.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

40.     Plaintiffs anticipate that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## BACKGROUND TO THE MERGER

42.     As of 2013, Eagle Rock was a growth-oriented master limited partnership engaged in two businesses: (a) midstream, which included (i) gathering, compressing, treating, processing and transporting natural gas; (ii) fractionating and transporting natural gas liquids (NGLs); (iii) crude oil and condensate logistics and marketing; and (iv) natural gas marketing

- 7 -

and trading; and (b) upstream, which included exploiting, developing, and producing hydrocarbons in oil and natural gas properties.

43.     However, Eagle Rock was laboring under a crushing amount of debt.  In an effort to reduce the Company's debt for the benefit of its unitholders and strengthen the Company's balance sheet moving forward, Eagle Rock entered into an agreement with Regency Energy Partners, L.P. ("Regency"), pursuant to which Eagle Rock would sell its midstream business to Regency for total consideration of up to $1.325 billion.  The December 23, 2013, press release announcing this transaction stated:

### Eagle Rock Agrees to Contribute Midstream Business to Regency Energy Partners for Up to $1.325 Billion

. . . Eagle Rock Energy Partners, L.P. announced today that it has entered into a definitive agreement to contribute its midstream business to Regency Energy Partners LP ("Regency") for total consideration of up to $1.325 billion.

Highlights of the transaction, which has been unanimously approved by the Board of Directors, include the following:

- Eagle Rock will receive total consideration of up to $1.325 billion, subject to certain closing conditions, consisting of $200 million of newly-issued Regency common units and a combination of cash and assumed debt

- Regency will conduct an offer to exchange Eagle Rock's $550 million of outstanding senior unsecured notes into an equivalent amount of Regency senior unsecured notes with the same tenor, coupon and a comparable covenant package. The cash portion of the purchase price will be reduced by the amount of notes exchanged subject to a 10% adjustment factor such that if all $550 million of bonds are exchanged, the total consideration will equal $1.27 billion ($1.325 billion less $55 million) consisting of $200 million in Regency units, $550 million of assumed debt and $520 million of cash proceeds

Following the consummation of the transaction, which is expected to close in the first half of 2014, Eagle Rock will be a pure-play upstream MLP with a strong balance sheet and ample liquidity for future growth. The Partnership intends to use the cash proceeds from the contribution of its midstream business to pay down borrowings under its revolving credit facility. Pro-forma for the sale, the Partnership anticipates its Total Leverage Ratio will be under 1.75x.

"This transaction is consistent with our stated goals of simplifying our structure and reducing our debt balances," said Joseph A. Mills, Eagle Rock's

Chairman and Chief Executive Officer.  "We are excited to announce this transformative transaction for Eagle Rock, which unlocks the value of our midstream business and positions the Partnership for future growth as a pure-play upstream MLP."

44.     Eagle Rock's unitholders as a group voiced strong support for the plan to reduce the Company's debt load and maintain a health balance sheet going forward via their vote approving the transaction.  As announced in an April 29, 2014 press release:

> Eagle Rock Energy Partners, L.P. ("Eagle Rock" or the "Partnership") (Nasdaq:EROC) announced that at its special meeting held today, the Partnership's common unitholders voted to approve the definitive agreement between Eagle Rock and Regency Energy Partners LP ("Regency"), announced December 23, 2013, in which Eagle Rock agreed to contribute its midstream business to Regency for total consideration of up to $1.325 billion (the "Midstream Business Contribution").  Based on the final results, approximately 60% of the outstanding common units participated in the vote.  Of those, an overwhelming majority voted in favor of the proposal to approve the Midstream Business Contribution. Votes cast in favor of the proposal totaled approximately 93.5 million, representing approximately 98% of all votes cast and approximately 59% of all outstanding common units.

45.     Having been enthusiastically approved by the Company's unitholders, Eagle Rock's transaction with Regency closed in July 2014.  Thereafter, Eagle Rock continued to trumpet the strength of its balance sheet and the Company's strong financial outlook. Commenting on the sale of the midstream business in Eagle Rock's 2014 Annual Report, defendant Mills stated that the "completion and timing of the [m]idstream divestiture has energized Eagle Rock into a partnership with a strong balance sheet and liquidity, upstream assets in key oil and gas basins in the United States, and a team in place to aggressively pursue accretive acquisition opportunities."

46.     In that same Annual Report, defendant Mills expounded on the Company's aggressive growth plans and prospects:

> Eagle Rock's healthy balance sheet and liquidity will enable us to expand our possibilities in 2015.  The Partnership intends to be opportunistic during this period of anticipated industry asset monetization activity in the second half of 2015.  We expect many upstream companies will divest of non-core assets to

- 9 -

reduce debt levels, improve liquidity and fund drilling programs. This environment could present an opportunity for Eagle Rock to acquire previously unavailable long-life, shallow decline producing assets that fit well in our MLP structure.

47. On the heels of this transformative, debt-reducing transaction, Eagle Rock began 2015 with strong financial results. On April 29, 2015, it reported on the first quarter of 2015. In that press release, defendant Mills stated that despite the "tumultuous commodity price environment" "Eagle Rock had a strong first quarter." Total revenue was $52.1 million, an increase of 15.3% from the first quarter of 2014.

48. Eagle Rock's financial results for its second quarter of 2015 were equally impressive. Commenting on these results, defendant Mills stated that "Eagle Rock had a strong second quarter, increasing our daily production by 4% over our first quarter volumes and increasing our distributable cash flow per unit by 4% as compared to the first quarter. We sold the remaining ETP units we obtained from [the Regency Transaction], which generated total aggregate proceeds of $197.8 million, thus reducing our leverage to 1.2x LTM Adjusted EBITDA."

49. However, by the time these 2Q15 results were made public, the Eagle Rock Defendants had already entered into the merger agreement with Vanguard providing for a mere 0.185 Vanguard. Specifically, on May 21, 2015, Vanguard and Eagle Rock issued a press release that stated, in pertinent part:

**Vanguard Natural Resources Announces Deal to Acquire**
**Eagle Rock Energy Partners, L.P. for Approximately**
**$614 Million and Conference Call to Discuss Transaction**

. . . Vanguard Natural Resources, LLC ("Vanguard" or "the Company") and Eagle Rock Energy Partners, L.P. ("Eagle Rock") today announced that they have entered into an Agreement and Plan of Merger pursuant to which a subsidiary of Vanguard will merge into Eagle Rock for total consideration of $474 million in Vanguard common units and the assumption of Eagle Rock's net debt of $140 million as of March 31, 2015. As a result of the transaction, Eagle Rock will become a wholly-owned indirect subsidiary of Vanguard. The transaction, which has been approved by the boards of directors of both

- 10 -

companies, will be a tax-free unit-for-unit transaction with an exchange ratio of 0.185 Vanguard common units per Eagle Rock common unit. The consideration to be received by Eagle Rock's unitholders is valued at $3.05 per Eagle Rock common unit based on Vanguard's closing price as of May 21, 2015, representing a 24% premium to Eagle Rock's closing price on May 21, 2015. Vanguard and Eagle Rock expect the transaction to close in the third quarter of 2015. The merger is subject to customary closing conditions, including the approval by both the Vanguard and Eagle Rock unitholders.

Scott W. Smith, Vanguard's President and Chief Executive Officer commented, "The transaction we announced today is another great opportunity for the Company and our unitholders. The assets being acquired are attractive bolt-ons to our Mid-Continent, Permian and Gulf Coast basin operations. Eagle Rock has a meaningful position in the SCOOP and STACK plays which will provide attractive drilling opportunities for the next several years. Considering the previously announced merger agreement with LRR Energy, L.P., we believe that all three companies' unitholders will benefit from a larger, more diversified entity with lower financial leverage and strong positions in several key U.S. basins. The all-unit nature of the transaction will allow Vanguard, LRR Energy and Eagle Rock unitholders to jointly reap the value growth in an improving commodity price cycle."

Joseph A. Mills, the Chairman of the Board and Chief Executive Officer of Eagle Rock commented, "We are pleased to announce our pending merger with Vanguard. We are excited about the opportunity to align with Vanguard which has a proven track record of creating value for its unitholders. We believe the transaction is compelling for Eagle Rock's unitholders by creating a significantly larger and more diverse asset base, an attractive premium and an opportunity to deliver significant value for our combined unitholders in the future. We have been very impressed with the Vanguard team and look forward to working together to successfully combine our two companies."

**Transaction Highlights**

- Eagle Rock's long-life, low-decline, mature assets are well-suited for Vanguard's upstream MLP model;

- Eagle Rock's low leverage will positively impact Vanguard's debt metrics and credit profile;

- Eagle Rock's oil and gas production is approximately 80% and 70% hedged in 2015 and 2016 respectively, with additional hedges in place through 2019;

- Proved R/P of approximately 12 years;

- Balanced reserves mix of 53% natural gas, 21% oil, and 26% natural gas liquids;

- Assets add scale in Vanguard's existing East Texas and Permian basins and establishes a new operating platform in the SCOOP/STACK play in the Anadarko basin;

- Significant potential for cost savings through G&A synergies;

- 11 -

- Opportunity to attract and retain experienced personnel from Eagle Rock to expand Vanguard's employee base;

- Q1 2015 production of approximately 79.7 MMcfe/d, increasing Vanguard's Q1 2015 production by 20%;

- Proved reserves at December 31, 2014 (SEC pricing) of approximately 318 Bcfe, increases Vanguard's estimated proved reserves by 16%;

- Adds approximately 1,778 producing wells and approximately 202,632 net acres; and

- The transaction is expected to be neutral to cash flow in 2015 and accretive in 2016 and beyond.

**Transaction Benefits to Eagle Rock Unitholders**

- Unit price premium;

- Significantly larger and more geographically diverse asset base;

- Expected material operating and cost synergies;

- Stronger financial position and better access to capital markets;

- Enhanced distribution stability, coverage and growth potential;

- Ability to participate in the future growth and upside of the combined company; and

- Improved unit trading liquidity.

## THE FALSE AND MISLEADING REGISTRATION STATEMENTS AND PROXY STATEMENT

50.     Subsequent to the announcement of the merger agreement, the Vanguard Defendants began disseminating false and misleading Registration Statements, and the Vanguard Defendants and Eagle Rock Defendants jointly disseminated a false and misleading Proxy Statement.

51.     Specifically, the Vanguard Defendants filed with the SEC on June 16, 2015, a "Form S-4 Registration Statement under the Securities Act of 1933." The Vanguard Defendants filed Amendment No. 1 to that Registration Statement with the SEC on July 9, 2015. The Vanguard Defendants filed Amendment No. 2 to that Registration Statement with the SEC on

July 24, 2015.  The Vanguard Defendants filed Amendment No. 3 to that Registration Statement with the SEC on August 7, 2015.  The Vanguard Defendants filed Amendment No. 4 to that Registration Statement with the SEC on August 20, 2015.  The Vanguard Defendants filed Amendment No. 5 to that Registration Statement with the SEC on August 31, 2015.  The Vanguard Defendants filed the effective Registration Statement with the SEC on September 3, 2015, and thereafter distributed it to Eagle Rock unitholders.  These Registration Statements were signed by defendants S. Smith, Robert, Anderson, McCullough and Singletary.

52.     Simultaneously with the filing of the effective Registration Statement with the SEC on September 3, 2015, the Vanguard Defendants and the Eagle Rock Defendants jointly filed and disseminated to Eagle Rock unitholders the Proxy Statement.

53.     The initial Registration Statement (at p. 129), as well as Amendments Nos. 1 (at p. 129), 2 (at p. 130), 3 (at p. 129) and 5 (at p. 130) thereto, and the effective Registration Statement (at p. 130), all contain an identical set of financial projections ("Vanguard Financial Projections") for Vanguard.  The Proxy Statement (at p. 130) likewise contains this same set of Vanguard Financial Projections.  The Vanguard Financial Projections are as follows:

|  | 2015E | 2016E | 2017E | 2018E | 2019E |
|---|---|---|---|---|---|
| Average daily production (MMcfe/d) | 399 | 407 | 403 | 400 | 402 |
| Total revenue ($ in millions) | 632 | 685 | 631 | 589 | 605 |
| Total EBITDA ($ in millions) | 407 | 435 | 377 | 336 | 347 |
| Distributable cash flow ($ in millions) | 173 | 183 | 117 | 68 | 73 |
| Key Assumptions |  |  |  |  |  |
| Realized Oil Price ($ Bbl) | 49.35 | 54.59 | 56.87 | 58.52 | 59.75 |
| Realized Gas Price ($/Mcf) | 2.16 | 2.54 | 2.73 | 2.83 | 2.94 |

Importantly, the Registration Statements and the Proxy Statement all characterize these projections as "the *material* unaudited prospective financial and operating data regarding Vanguard," and indicate that they were "prepared by Vanguard management."  The Registration Statements and the Proxy Statement also state that "Vanguard estimated these amounts based on then-current projections and expectations."

- 13 -

54.     These "material" projections – in defendants' own words – are false and misleading, and they omit sufficient material information to make them not false and misleading. For example, under Vanguard's preexisting debt covenants, the maximum total debt to EBITDA ratio was 5.5 to 1 for 2015, falling to 5.25 to 1 for 2016, then falling again to 4.5 to 1 for 2017 and beyond.  With total consolidated debt of almost $2.2 billion as of 1Q15, and projected EBITDA for 2015 of $407 million, Vanguard would have had a 2015 debt to EBITDA ratio of approximately 5.4 to 1, slightly within the covenant.  Assuming no significant debt reduction in 2016, that ratio – with projected EBITDA of $435 million – would be approximately 5.05 to 1, again slightly within the covenant.  In 2017, however, with projected EBITDA of $377 million, the debt to EBITDA ratio would jump to 5.8 to 1, a significant breach of the debt covenants.  The ratios would be even worse for 2018 and 2019, based on the Vanguard Financial Projections, and likewise would result in a breach of the debt covenants.

55.     The Registration Statements and the Proxy Statement make no mention of this issue.  Rather, they contain pages and pages of generalized "risks" and "uncertainties" that are purportedly beyond defendants' ability to "control or predict."  These purported "uncertainties" include Vanguard's ability "to service debt or make distributions."  These generalized, boilerplate statements were materially false and misleading and omitted material then-current factual information.  The looming debt problem, along with its impact on distributions to unitholders, was neither some future uncertainty nor was it beyond defendants' ability to predict.

56.     Indeed, barely two months later, Vanguard announced a drastic cut to common unitholder distributions.  In a December 18, 2015, press release, Vanguard stated:

> Vanguard Natural Resources, LLC (NASDAQ: VNR) ("Vanguard") has declared a cash distribution attributable to the month of November 2015 of $0.03 per common unit ($0.36 per unit on an annual basis) payable on January 14, 2016 to common unitholders of record on January 4, 2016.  ***This distribution level represents an approximate 75% reduction from the $0.1175 per common unit***

*monthly distribution ($1.41 per common unit on an annual basis) paid last month*. Based on yesterday's closing price of $2.89, the new distribution provides a current yield of 12.5%.

57.     What is the reason for slashing distributions to unitholders, including Eagle Rock's former unitholders?  The debt covenants.  As the December 18 press release goes on to admit:

> Scott W. Smith, President & CEO of Vanguard commented, "Given the current commodity and capital markets environment, we believe the most prudent strategy is to reduce the cash distribution payout on our common units.  Lowering the common unit distribution from $1.41 annualized to $0.36 annualized reduces the cash required for distributions from approximately $185 million to $47 million.  *Excess cash flow that is generated by this action will be directed at paying down debt under Vanguard's revolving credit facility* and is expected to result in significant distribution coverage in both 2016 and 2017 based on current commodity strip prices.  We believe it is in the best long-term interest of the Company to redirect our excess cash flow in this manner and better position Vanguard when a commodity price recovery occurs in the future."

58.     Accordingly, the Registration Statements and the Proxy Statement are false and misleading with regard to both the debt and distributions issues.  And there can be no question regarding the materiality of these issues.  Not only did Eagle Rock, with the express approval of its unitholders, undergo a major restructuring less than two years ago specifically to avoid a debt crisis (so why would they knowingly jump right back into that problem with the Vanguard merger?), but a key justification for recommending that Eagle Rock unitholders vote in favor of the merger was the "Discounted Distribution Analysis" performed by the financial advisor to the Eagle Rock Defendants, which is premised on Vanguard continuing to pay substantial distributions to unitholders.  *See* Registration Statements and Proxy Statement at pp. 116-117. Accordingly, cuts by Vanguard to the planned distributions to pay down debt would be highly material to Eagle Rock unitholders.

59.     In sum, the Registration Statements and Proxy Statement have been shown to be false and misleading within a handful of weeks after the close of the merger.  None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for

- 15 -

the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.  And Eagle Rock's former unitholders have been substantially damaged thereby.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against The Vanguard Defendants

60.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

61.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against the Vanguard Defendants.  This is a non-fraud cause of action.  Plaintiffs do not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

62.     The Registration Statements were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.     The Vanguard Defendants are strictly liable to plaintiffs and the Class for the misstatements and omissions.

64.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.

65.     By reason of the conduct herein alleged, each of the Vanguard Defendants violated, and/or controlled a person who violated, §11 of the 1933 Act.

66.     Plaintiffs acquired Vanguard common units traceable to the offering of Vanguard units in connection with the Eagle Rock merger.

67.     By reason of the conduct herein alleged, plaintiffs and the Class have sustained damages.

68.     At the time of the merger, plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.  Less than one year has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiffs commenced this action.  Less than one year has elapsed between the time that the securities upon which this Count is brought were offered to the plaintiffs and the Class and the time plaintiffs commenced this action.

## COUNT II

**For Violation of §15 of the 1933 Act
Against The Vanguard Defendants**

69.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

70.     This Count is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against the Vanguard Defendants.  This is a non-fraud cause of action.  Plaintiffs do not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

71.     Defendants S. Smith, Robert, Anderson, McCullough and Singletary each were control persons of Vanguard by virtue of their positions as directors and/or senior officers of Vanguard.  Defendants S. Smith, Robert, Anderson, McCullough and Singletary each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers of Vanguard. The Company controlled defendants S. Smith, Robert, Anderson, McCullough and Singletary and all of Vanguard's employees.

- 17 -

72.     The defendants identified in the First Count were culpable participants in the violations of §11 of the 1933 Act alleged in the First Count, based on the allegations herein, including, but not limited to, their having signed or authorized the signing of the Registration Statements and having otherwise participated in the process which allowed the offering of Vanguard units in connection with the Eagle Rock merger to be successfully completed.

## COUNT III

### For Violations of §14(a) of the 1934 Act and Rule 14a9 Promulgated Thereunder Against All Defendants

73.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

74.     The Proxy Statement was prepared, reviewed and/or disseminated by defendants. The Proxy Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.  This is a non-fraud cause of action. Plaintiffs do not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

75.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Proxy Statement were true and without omissions of any material facts and were not misleading.

76.     By reason of the foregoing, defendants have violated §14(a) of the 1934 Act, 15 U.S.C. §78n(a), and SEC Rule 14a-9(a) promulgated thereunder.

77.     By reason of the conduct herein alleged, plaintiffs and the Class have sustained damages.

## COUNT IV

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

78.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

79.     The Board, LLC and GP acted as controlling persons of Eagle Rock within the meaning of §20(a) of the 1934 Act, 15 U.S.C. 78t(a), as alleged herein.  S. Smith, Robert, Anderson, McCullough and Singletary acted as controlling persons of Vanguard within the meaning of §20(a) of the 1934 Act as alleged herein.  These defendants had the power to influence and control and did influence and control, directly or indirectly, the dissemination of the Proxy Statement which plaintiffs contend is false and misleading.

80.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of Eagle Rock and/or Vanguard, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the acquisition. They were thus directly involved in the making of this document.

81.     Vanguard, Eagle Rock, LLC and GP also had direct supervisory control over composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

82.     By virtue of the foregoing and their positions as control persons, defendants have violated §20(a) of the 1934 Act.  This is a non-fraud cause of action.  Plaintiffs do not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand relief, in plaintiffs' favor and in favor of the Class and against defendants, as follows:

A.      Declaring that this action is properly maintainable as a class action;

B.      Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Granting such other and further equitable and monetary relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

EDISON, McDOWELL & HETHERINGTON LLP

By: /s/ *Andrew M. Edison*
      Andrew M. Edison
      Attorney-in-Charge
      Southern District Bar No. 18207
      andrew.edison@emhllp.com

3200 Southwest Freeway, Suite 2100
Houston, Texas  77027
Telephone:  713/337-5581
713/337-8841 (fax)

1118691_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8150 N. Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-4568
281/254-7789 (fax)

POWERS TAYLOR LLP
PATRICK W. POWERS
Campbell Centre II
8150 North Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-8900
214/239-8901 (fax)

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY  10036
Telephone:  212/490-9550
212/986-0158 (fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that on the 12th day of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        /s/ *Andrew M. Edison*

        Andrew M. Edison

- 21 -

1118691_1

1118691_1