United States District Court
Southern District of Texas

**ENTERED**

October 21, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IRVING BRAUN, JUDITH BRAUN, and CECIL PHILAN, Individually and on Behalf of All Others Similarly Situated, §<br><br>Plaintiffs, §<br><br>vs. §<br><br>EAGLE ROCK ENERGY PARTNERS, L.P.; EAGLE ROCK ENERGY G&P, LLC; EAGLE ROCK ENERGY GP, L.P.; JOSEPH A. MILLS; CHRISTOPHER D. RAY; DAVID W. HAYES; WILLIAM K. WHITE; WILLIAM A. SMITH; HERBERT C. WILLIAMSON III; PEGGY A. HEEG; PHILIP B. SMITH; VANGUARD NATURAL RESOURCES, LLC; SCOTT W. SMITH; RICHARD A. ROBERT; W. RICHARD ANDERSON; BRUCE W. MCCULLOUGH; and LOREN SINGLETARY, §<br><br>Defendants. § | CIVIL ACTION NO. H-15-1470 |

**MEMORANDUM OPINION AND ORDER**

This action was brought against Eagle Rock Energy Partners, L.P.; Eagle Rock Energy G&P, LLC; Eagle Rock Energy GP, L.P.; Joseph A. Mills; Christopher D. Ray; David W. Hayes; William K. White; William A. Smith; Herbert C. Williamson III; Peggy A. Heeg; Philip B. Smith; Vanguard Natural Resources, LLC; Scott W. Smith; Richard A. Robert; W. Richard Anderson; Bruce W. McCullough; and Loren Singletary for alleged violations of §§ 11 and 15 of the

Securities Act of 1933, 15 U.S.C. §§ 77k, o, and §§ 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), t(a). Pending before the court is Defendants' Motion to Dismiss (Docket Entry No. 17), Plaintiffs' Opposition [to] Defendants' Motion to Dismiss ("Plaintiffs' Opposition") (Docket Entry No. 18), and Defendants' Reply in Support of Their Motion to Dismiss (Docket Entry No. 19). For the reasons stated below, Defendants' Motion to Dismiss will be granted.

## I. <u>Procedural History and Alleged Facts</u>

On June 1, 2015, the original plaintiff, Pieter Heydenrych, initiated this action by filing a Class Action Complaint for Breach of Fiduciary Duty ("CAC," Docket Entry No. 1). On October 26, 2015, Irving Braun, Judith Braun, and Cecil Philan were appointed Lead Plaintiffs for this action. On February 12, 2016, Plaintiffs filed a Consolidated Complaint for Violations of the Securities Act of 1933 ("the Securities Act") and the Securities Exchange Act of 1934 ("the Securities Exchange Act") ("Consolidated Complaint," Docket Entry No. 16).

Plaintiffs allege that Eagle Rock Energy Partners, L.P. ("Eagle Rock") was a master limited partnership engaged in the upstream oil and gas business. Eagle Rock was managed by its general partner, Eagle Rock Energy GP, L.P., which was in turn managed by the board of directors (the "Eagle Rock Board") of its general partner, Eagle Rock Energy GP, LLC. David Hayes, Peggy

Heeg, Joseph Mills, Christopher Ray, Philip Smith, William Smith, William White, and Herbert Williamson III were the members of the Eagle Rock Board.  Vanguard Natural Resources, LLC ("Vanguard") is a publicly traded company focused on the acquisition and development of oil and natural gas properties in the United States. Scott W. Smith, Richard A. Robert, Richard Anderson, Bruce W. McCullough, and Loren Singletary are the members of Vanguard's board of directors (the "Vanguard Board").

On May 21, 2015, Eagle Rock and Vanguard announced that they had entered into a merger agreement by which Vanguard would acquire Eagle Rock.   In connection with the merger the Eagle Rock Defendants, together with the Vanguard Defendants, issued a joint Proxy and Registration Statement (the "Statement"), which contained the communications at issue.[1]  The Statement contained financial disclosures and projections regarding the companies' pre-merger financial status and post-merger projections.  Specifically, the Statement included the following information:

- historical financial information for Vanguard and Eagle Rock (Docket Entry No. 17-1 at 43-58);

- pro forma financial statements illustrating the balance sheet and income statement of the combined enterprise (id. at 59-60, 190-234);

---

[1]For clarity, the court will cite to the joint Proxy and Registration Statement attached as Exhibit A to Defendants' Motion to Dismiss (Docket Entry No. 17-1).

- comparative per unit information, including a comparison of Vanguard's and Eagle Rock's historical unit prices and quarterly distributions (<u>id.</u> at 61-68);

- a summary of the financial analysis conducted by Eagle Rock's financial advisor, Evercore Group, regarding the merger (<u>id.</u> at 135-48);

- a summary of the financial analysis conducted by Vanguard's financial advisor, Wells Fargo Securities, regarding the merger (<u>id.</u> at 121-29);

- financial and operating projections for Eagle Rock and Vanguard as stand-alone entities given to their Boards when evaluating the merger (<u>id.</u> at 150-58);

- bullet point lists of the positive and negative considerations taken into account by the Eagle Rock Board (<u>id.</u> at 130-35) and Vanguard Board (<u>id.</u> at 120-21) in approving the merger;

- risk factors (<u>id.</u> at 69-84);

- a description of where Eagle Rock and Vanguard unitholders can obtain additional information (id. at 316-19);

- a complete copy of the Merger Agreement (<u>id.</u> at 320-86); and

- a complete copy of Evercore's and Wells Fargo Securities' fairness opinions (<u>id.</u> at 400-08).

The Statement also contained the following financial projections:

|  | 2015E | 2016E | 2017E | 2018E | 2019E |
|---|---|---|---|---|---|
| Average daily production | 399 | 407 | 403 | 400 | 402 |
| Total revenue ($ in millions) | 632 | 685 | 631 | 589 | 605 |
| Total EBITDA ($ in millions) | 407 | 435 | 377 | 336 | 347 |
| Distributable cash flow ($ in millions) | 173 | 183 | 117 | 68 | 73 |
| Realized Oil Price ($/Bbl) | 49.35 | 54.59 | 56.87 | 58.52 | 59.75 |
| Realized Gas Price ($/Mcf) | 2.16 | 2.54 | 2.73 | 2.83 | 2.94 |

(<u>Id.</u> at 152.)

Plaintiffs allege that Defendants omitted material information from the Statement and, as a result, the projections were misleading. Specifically, Plaintiffs allege that Defendants failed to mention "a looming debt problem."[2] Vanguard's pre-merger credit agreement contained covenants limiting the consolidated ratio of the companies' debt to earnings before interest, taxes, depreciation, and amortization ("EBITDA").[3] Plaintiffs allege that the outstanding debt at the time the Statement was issued was more than 4.5x the projected 2017 EBITDA of the combined companies, which would violate the debt covenants. The merger was approved by a vote on October 5, 2015, and the merger closed on October 8, 2015. Plaintiffs allege that on December 18, 2015, the merged Vanguard ("the Company") announced a cash distribution to common unitholders significantly lower than the previous month's and has since suspended distributions altogether.

Plaintiffs allege in their Opposition that Defendants omitted from the Statement the material fact that cash distributions would have to be reduced to meet the debt ratio requirements of Vanguard's credit agreement. Plaintiffs also allege that statements implying or asserting the belief that distributions would continue were false or misleading.

_____

[2]Consolidated Complaint, Docket Entry No. 16, p. 15 ¶ 55.

[3]Eighth Amendment To Third Amended And Restated Credit Agreement ("Credit Agreement"), Docket Entry No. 17-5, p. 6.

## II.   Applicable Legal Standards

Defendants argue that Plaintiffs' Consolidated Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[4]

### A.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

---

[4]Defendants' Motion to Dismiss, Docket Entry No. 17.

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966).  Moreover, courts do not accept as true legal conclusions.

When considering a motion to dismiss courts consider the complaint and its proper attachments.  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008).  Courts may also rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Id.  In securities cases courts may take judicial notice of the contents of public disclosure documents that are required by law to be filed with the Securities Exchange Commission ("SEC") and are actually filed with the SEC with the caveat that these documents may be considered only for the purpose of determining what statements they contain; not for proving the truth of their contents.  Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 & n.1 (5th Cir. 1996) (citing and adopting rule of Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991), and explaining that this rule does not apply to other forms of disclosure such as press releases or announcements at shareholder meetings).

B.   Federal Securities Law

The federal securities laws were enacted primarily to serve two distinct goals:   (1) to promote or require sufficient disclosure of information to allow those in securities markets to make intelligent investment decisions, and (2) to control fraud and

manipulation in the trading of securities.  <u>Securities and Exchange</u> <u>Commission v. Southwest Coal & Energy Co.</u>, 624 F.2d 1312, 1318 (5th Cir. 1980).

### 1.   <u>Control Person Liability</u>

Plaintiffs' claims under § 15 of the Securities Act and § 20(a) of the Securities Exchange Act assert control person liability.  "Control person liability is secondary only and cannot exist in the absence of a primary violation."  <u>Southland Securities</u> <u>Corp. v. INSpire Insurance Solutions, Inc.</u>, 365 F.3d 353, 383 (5th Cir. 2004) (citing <u>Lovelace v. Software Spectrum Inc.</u>, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996)).  Plaintiffs' claims under § 11 of the Securities Act and § 14(a) of the Securities Exchange Act will consequently be analyzed first.  Since those primary claims will be dismissed, the court need not consider the secondary claims.

### 2.   <u>The Securities Act Claim</u>

"The Securities Act of 1933, 48 Stat. 74, 15 U.S.C. § 77a <u>et</u> <u>seq.</u>, protects investors by ensuring that companies issuing securities (known as 'issuers') make a 'full and fair disclosure of information' relevant to a public offering.  <u>Omnicare, Inc. v.</u> <u>Laborers District Council Construction Industry Pension Fund</u>, 135 S. Ct. 1318, 1323 (2015).  Section 11 of the Act provides a private cause of action "[i]n case any part of [a] registration statement, when such part became effective, contained an untrue statement of

a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. No proof of intent to deceive or defraud is necessary. Omnicare, Inc., 135 S. Ct. at 1323.

###    3.   The Securities Exchange Act Claims

Section 14(a) of the Securities Exchange Act makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a)(1). Section 14(a) provides for an implied private right of action. KBR v. Chevedden, 478 F. App'x 213, 215 (5th Cir. 2012) (citing J.I. Case Co. v. Borak, 84 S. Ct. 1555, 1559 (1964)).

> The elements of a section 14(a) claim are: (1) defendants misrepresented or omitted a material fact in a proxy statement, Virginia Bankshares, Inc. v. Sandberg, 111 S. Ct. 2749, 2757 (1991); TSC Indus., Inc. v. Northway, Inc., 96 S. Ct. 2126, 2132 (1976); Justin Indus. v. Choctaw Sec., L.P., 920 F.2d 262, 267 (5th Cir. 1990); (2) defendants acted at least negligently in distributing the proxy statement, Herskowitz v. Nutri/System, Inc., 857 F.2d 179, 189–90 (3rd Cir. 1988), cert. denied, 109 S. Ct. 1315 (1989); and (3) the false or misleading proxy statement was an essential link in causing the corporate actions, International Broadcasting Corp. v. Turner, 734 F. Supp. 383, 390 (D. Minn. 1990); Halpern v. Armstrong, 491 F. Supp. 365, 378 (S.D.N.Y. 1980).

In re Browning-Ferris Industries, Inc. Shareholder Derivative Litigation, 830 F. Supp. 361, 365 (S.D. Tex. 1993), aff'd sub nom. Cohen v. Ruckelshaus, 20 F.3d 465 (5th Cir. 1994).

### III.  Analysis

A 12(b)(6) motion to dismiss is ordinarily decided solely on the complaint and documents incorporated by reference therein.  But Plaintiffs have substantially altered their position from the Consolidated Complaint to their Opposition.  Plaintiffs' changes include (1) altering the debt-to-EBITDA calculation on which they base their claim and (2) adding additional allegedly false or misleading statements.  Defendants correctly contend that complaints should not be amended via responses.  But because the outcome is the same, and because the court is not inclined to allow further amendment, the court will analyze Plaintiffs' cumulative allegations.

At issue is whether Defendants omitted material facts or made false or misleading statements of material fact in their Registration Statement or Proxy Statement.  Although materiality is a mixed question of law and fact, cases may be properly dismissed on the pleadings for lack of materiality.  Kapps v. Torch Offshore, Inc., 379 F.3d 207, 216 (5th Cir. 2004).  Plaintiffs allege that Defendants' statements "are false and misleading with regard to both the debt and distributions issues."[5]  Assuming debt levels would have remained the same from the time the Statement was issued and that the projected 2017 EBITDA was accurate, Plaintiffs allege that the resulting consolidated debt-to-EBITDA ratio would breach

_____

[5]Consolidated Complaint, Docket Entry No. 16, p. 16 ¶ 58.

existing debt covenants.[6]   Although Plaintiffs miscalculated the ratio in their Consolidated Complaint, Defendants do not dispute that the combined debt of the merged Company at the time the Statement was issued would exceed a 4.5x multiple of its projected, combined EBITDA if debt were to remain unchanged and earnings projections were to prove accurate.[7]

Plaintiffs refer to this situation as the Company's "looming debt problem" and argue that Defendants' projections are false or misleading to the extent that they fail to account for the debt covenants.[8]   Plaintiffs do not dispute the earnings projections but dispute the Company's ability to continue historical distributions without breaching the debt covenants.[9]   Plaintiffs claim that the projections and use of historical distributions in the valuation of the pre-merger companies were therefore misleading.[10]   Because the debt covenants were publicly available, and because this specific risk was identified by cautionary language in the Statement, the court concludes that these omissions and allegedly false or misleading statements were immaterial as a matter of law.

_____

[6]Id. at 15.

[7]See Defendants' Motion to Dismiss, Docket Entry No. 17, pp. 16-18, and Plaintiffs' Opposition, Docket Entry No. 18, pp. 24-25.

[8]Consolidated Complaint, Docket Entry No. 16, p. 15 ¶ 55.

[9]Id. at 15-16.

[10]Id.

## A.    Alleged Omissions

The alleged omissions are either inferential (i.e., not factual), immaterial, or both.  A "fact" is "something that actually exists." Black's Law Dictionary (10th ed. 2014).  At the time of the Statement the relevant facts alleged were that (1) the pre-merger companies had outstanding debt, and (2) the debt was subject to covenants contained in the Credit Agreement.  These facts were publicly available, whether in the Statement or other filings.[11]  Plaintiffs do not allege that the companies were then in breach of the debt covenants.  Instead, they infer that, if certain assumptions were to hold true, Defendants would eventually breach the existing debt covenants.  But Defendants had no duty to draw or communicate such an inference.  "As a general rule, so long as material facts are disclosed or already known, it is not deceptive to fail to . . . verbalize all adverse inferences expressly." Klamberg v. Roth, 473 F. Supp. 544, 551–52 (S.D.N.Y. 1979) (collecting cases).  "[T]he law is clear that companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures." Singh v. Schikan, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015); see also Kahn v. Wien, 842 F. Supp. 667, 676 (E.D.N.Y.), aff'd, 41 F.3d 1501 (2d Cir. 1994) ("A proxy statement need not negatively characterize all the facts that are disclosed or expressly verbalize all adverse

---

[11]See Credit Agreement, Docket Entry No. 17-5.

inferences from those facts"). The facts on which Plaintiffs rely to infer the existence of the "looming debt problem" were publicly available. Plaintiffs even demonstrate in their Consolidated Complaint that the eventual outcome foreshadowed by the Statement could be derived from basic mathematical operations.[12]

Plaintiffs' arguments rely on assumptions that Defendants were not required to make. For example, Plaintiffs assume that the Company's outstanding debt and debt covenants would remain unchanged from the time the projections were made through 2017. But Defendants point out that the Credit Agreement was already amended several times--once even for an alteration to the covenant concerning the maximum debt-to-EBITDA ratio.[13] Plaintiffs do not contend that further amendments were impossible or that the Company had no options other than breach. Plaintiffs simply posit a scenario contingent on several assumptions and argue that Defendants should have described that possible scenario in the Statement. But Defendants were under no obligation to do so.

Assuming, arguendo, that Defendants' omission qualifies as a "fact," the standard for materiality of an omission is whether "there [is] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made

---

[12]Consolidated Complaint, Docket Entry No. 16, p. 15.

[13]Defendants' Motion to Dismiss, Docket Entry No. 17, p. 21; see also Credit Agreement, Docket Entry No. 17-5.

available." <u>Kapps</u>, 379 F.3d at 214 (5th Cir. 2004) (citations
omitted) (emphasis in original). "The 'total mix' of information
normally includes information that is and has been in the readily
available general public domain and facts known or reasonably
available to the shareholders." <u>Id.</u> at 216 (citing <u>United
Paperworkers International Union v. International Paper Co.</u>, 985
F.2d 1190, 1199 (2d Cir. 1993)). In <u>Kapps</u> the plaintiffs alleged
that a prospectus was misleading in part because it omitted
information regarding natural gas prices. <u>Id.</u> at 210-11. Although
the Fifth Circuit rejected the argument that the mere public
availability of that information was sufficient, the court
ultimately determined that public availability, when combined with
the cautionary statements in the prospectus, made the omission
immaterial. <u>See</u> <u>id.</u> at 214-17 (collecting supporting cases from
other circuit courts).

Here, the relevant information regarding the debt covenants
was publicly available in other disclosures,[14] and the Statement
contained cautionary language regarding debt covenants.[15]
Plaintiffs would apparently have Defendants reproduce and
incorporate any and all previous disclosures that, when combined
with their projections, could point to unrealized financial
difficulties. Presumably, Plaintiffs also want Defendants to

---

[14]<u>See</u> Credit Agreement, Docket Entry No. 17-5, p. 11.

[15]<u>See</u> <u>infra</u>, Part III. B.

connect the dots to draw attention to the "looming debt problem."
But as the Second Circuit put it, prospectuses are not "required to
address [reasonable investors'] as if they were children in
kindergarten." In re ProShares Trust Securities Litigation, 728
F.3d 96, 102 (2d Cir. 2013) (citations omitted).   It is an
investor's responsibility to combine available facts in order to
derive estimates about a security's value.   Copying and attaching
previously disclosed information to the Statement would not have
significantly altered the total mix of information available to
investors.   The only information not already explicitly available
was the inference that Plaintiffs deduced from publicly available
information.

**B.   Allegedly False or Misleading Statements**

Plaintiffs are unclear as to whether the statements regarding
future distributions are misleading solely due to Defendants
alleged omissions or are misleading on their own.   Plaintiffs argue
that, in light of the "looming debt problem," Defendants'
projections regarding future distributions were false or
misleading.   Plaintiffs do not identify specific projections.
Instead, the Consolidated Complaint references a "Discounted
Distribution Analysis," which was included as a basis for the
valuation of the underlying securities.[16]   The Consolidated
Complaint is unclear, but Plaintiffs seem to allege that the

_____

[16]Consolidated Complaint, Docket Entry No. 16, p. 16.

inclusion of historical distributions for valuation purposes implies that distributions will continue. Plaintiffs supplement their argument in their Response to include the following language from the Statement: "Vanguard believes [Eagle Rock's] assets will provide consistent and predictable cash flow volumes that will **enable Vanguard to continue to make consistent monthly cash distributions to its unitholders** and, over time, improve equity valuation" [emphasis in original].[17]

Defendants argue that the allegedly false or misleading statements are subject to the "bespeaks caution" doctrine.[18] This doctrine applies when (1) forward-looking statements, such as financial projections, are (2) accompanied by meaningful cautionary language, which would alert the reasonable investor to consider those statements with healthy skepticism. See In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation, 7 F.3d 357, 371 (3d Cir. 1993) ("[W]hen an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the

---

[17]Plaintiffs' Opposition, Docket Entry No. 18, p. 8.

[18]Defendants initially raised a defense under the Private Securities Litigation Reform Act's ["PSLRA"] "safe harbor," which Plaintiffs challenged. Since the materiality standards under the safe harbor, the bespeaks caution doctrine, and the Fifth Circuit's "total mix" analysis all lead to the same result, the court need not decide the applicability of the PSLRA.

'total mix' of information the document provided investors."). Although the Fifth Circuit has rejected use of the "bespeaks caution" doctrine as a per se bar to liability, the reasoning underlying the doctrine is consistent with the "total mix" test described above. See Rubinstein v. Collins, 20 F.3d 160, 167 & n.25 (5th Cir. 1994) ("the 'bespeaks caution' doctrine merely reflects the unremarkable proposition that statements must be analyzed in context") (citing In Re Trump, 7 F.3d at 364). Meaningful cautionary statements should include "specific, concrete explanations that clearly identif[y] and quantif[y] . . . clearly present financial dangers." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 247 (5th Cir. 2009).[19]

Whether Plaintiffs' allegations refer to implied projections of future distributions or Defendants' explicit "belief" about the Company's ability to make future distributions, the statements are foreword-looking and, considered in context, are not actionable.

---

[19]In their Opposition, Plaintiffs make much of the following quotation: "[T]he doctrine of bespeaks caution provides no protection to someone who warns his hiking companions to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away." Kurtzman v. Compaq Computer Corp., Civil Action No. H-99-1011, 2000 WL 34292632, at *57 (S.D. Tex. Dec. 12, 2000) (citing In re Prudential Sec. Ltd. Partnership Litig., 930 F. Supp. 68, 72 (S.D.N.Y. 1996). Whatever the potential applicability of this reasoning, it cannot apply when Plaintiffs have explicitly disclaimed any allegations of scienter on the part of Defendants. To the extent that either of Plaintiffs' claims sound in fraud, they would fail under the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the PSLRA, 15 U.S.C. §§ 78u-4, et seq.

See Rosenzweig v. Azurix Corp., 332 F.3d 854, 869 (5th Cir. 2003) ("[G]eneralized, positive statements about the company's . . . future prospects are not actionable because they are immaterial."). In Rosenzweig the Fifth Circuit evaluated the materiality of forward-looking statements in a prospectus. One such statement, discussing the issuer's "anticipate[d]" sources of funding for capital expenditures, was deemed immaterial. Id. Although the Fifth Circuit did not explicitly invoke the "bespeaks caution" doctrine, it applied a similar analysis. Id. In addition to the qualifying term "anticipate," the statement was accompanied by "extensive cautionary language about the company's ability to secure financing." Id. The court cited one such statement: "There can be no assurances that we will be successful in securing any financing arrangements." Id.

The are clear parallels between the statements in Rosenzweig and the ones in this case. Far from detailed or specific financial projections, Plaintiffs point to a vaguely hopeful "belief" about continuing future distributions and an implication drawn from an advisor's valuation. "Belief," like "anticipate," is a qualifying term, and the statements were accompanied by specific cautionary language. In addition to the generalized warnings included elsewhere in the Statement,[20] Defendants identify the following cautionary language:

---

[20]See supra, pp. 3-4.

-18-

> The unaudited prospective financial and operating
> information . . . is subjective in many respects. As a
> result, there can be no assurance that the prospective
> results will be realized or that actual results will not
> be significantly higher or lower than estimated. Since
> the unaudited prospective financial and operating
> information covers multiple years, such information by
> its nature becomes less predictive with each successive
> year.

Statement, Docket Entry No. 17-1, pp. 150-51.

> [T]he above unaudited prospective financial and operating
> information reflects numerous assumptions and estimates
> as to future events . . . . The estimates and assumptions
> underlying the unaudited prospective financial and
> operating information involve judgments with respect to,
> among other things, future economic, competitive,
> regulatory and financial market conditions and future
> business decisions that may not be realized and that are
> inherently subject to significant business, economic,
> competitive and regulatory uncertainties and
> contingencies, . . . all of which are difficult to predict
> and many of which are beyond the control of Vanguard,
> Eagle Rock and LRE and will be beyond the control of the
> combined entity resulting from the merger. There can be
> no assurance that the underlying assumptions will prove
> to be accurate or that the projected results will be
> realized, and actual results likely will differ, and may
> differ materially, from those reflected in the unaudited
> prospective financial and operating information,
> regardless of whether the merger is completed.

Id. at 157. The Statement also warns: "Vanguard's leverage
relative to Eagle Rock['s leverage means that] declines in
commodity prices could have a more negative impact on the value of
the combined company than would be expected on Eagle Rock on a
standalone basis." Id. at 35. And finally, the Statement
identifies among particular "risks or uncertainties" the Company's
ability 'to comply with covenants contained in the agreements
governing their indebtedness' and 'ability to generate sufficient
cash flows for making distributions.' Id. at 83.

-19-

Even assuming that vaguely hopeful projections of "consistent monthly cash distributions" are sufficient to materially influence a reasonable investor, the warnings in the Statement are sufficient to bespeak caution regarding any such projections. At the very least, a reasonable investor would have been prompted to investigate the pre-merger companies' debt positions, which were publicly disclosed in other filings. Put another way, the express or implied belief that distributions of some unspecified amount would continue did not, in context, significantly alter the total mix of available information on which a reasonable investor would rely.

Returning to the Discounted Distribution Analysis, the court concludes that the Analysis did not significantly alter the total mix of information made available. The Analysis explicitly drew on "projections" similar to those just discussed. A reasonable investor would have evaluated those projections in light of the cautionary statements provided in the fairness opinion of which they were a part and elsewhere.

In light of the forward-looking nature of the statements Plaintiffs identify and the accompanying cautionary language, the statements were immaterial as a matter of law and were not false or misleading.

## IV.   Conclusion and Order

Plaintiffs fail to state a claim for which relief may be granted under § 11 of the Securities Act or § 14(a) of the

-20-

Securities Exchange Act because they fail to identify a material omission or false or misleading statement of material fact. Because Plaintiffs' primary claims fail, their secondary claims under § 15 of the Securities Act and § 20(a) of the Securities Exchange Act will be dismissed as well.

Plaintiffs have requested that any dismissal be without prejudice so that Plaintiffs may cure any defects by amendment. But Plaintiffs have already substantially altered the nature of this case in their Consolidated Complaint, and the court has considered the further adjustments made in Plaintiffs' Opposition. Although the court recognizes that leave to amend should be "freely" given, further amendment here would be futile.

For the reasons stated above, Defendants' Motion to Dismiss (Docket Entry No. 17) will be **GRANTED**, and Plaintiffs' claims will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this 21st day of October, 2016.

_____

SIM LAKE
UNITED STATES DISTRICT JUDGE